UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
FORT LAUDERDALE DIVISION

CASE NO.: 0:21-cv-61085-RAR

MASSIMILIANO CAVALERA,

    Plaintiff,

v.

THE INDIVIDUALS, PARTNERSHIPS AND
UNINCORPORATED ASSOCIATIONS
IDENTIFIED ON SCHEDULE "A,"

    Defendants.
_____/

## AMENDED COMPLAINT

Plaintiff MASSIMILIANO CAVALERA ("Cavalera" or "Plaintiff"), by and through undersigned counsel, hereby sues Defendants, the Individuals, Partnerships, and Unincorporated Associations identified in the caption, which are set forth on Schedule "A" hereto (collectively, the "Defendants"), and alleges as follows:

### NATURE OF THE ACTION

1. Defendants are promoting, selling, reproducing, offering for sale, and distributing goods using counterfeits and confusingly similar imitations of Cavalera's trademarks within this district through various Internet based e-commerce stores and fully interactive commercial Internet websites operating under the seller identification names set forth on Schedule "A" hereto (the "Seller IDs").

2. Like many other famous trademark owners, Plaintiff suffers ongoing daily and sustained violations of his trademark rights at the hands of counterfeiters and infringers, such as Defendants herein, who wrongfully reproduce and counterfeit Plaintiff's trademarks for the twin

purposes of (i) duping and confusing the consuming public and (ii) earning substantial profits. The natural and intended byproduct of Defendants' actions is the erosion and destruction of the goodwill associated with Plaintiff's trademarks, as well as the destruction of the legitimate market sector in which it operates.

3. In order to combat the indivisible harm caused by the combined actions of Defendants and others engaging in similar conduct, Plaintiff has expended significant amounts of resources in connection with trademark enforcement efforts, including legal fees, investigative fees, and support mechanisms for law enforcement. The exponential growth of counterfeiting over the Internet, particularly through online marketplace platforms, has created an environment that requires companies, such as Plaintiff, to expend significant time and money across a wide spectrum of efforts in order to protect both consumers and himself from the negative effects of confusion and the erosion of the goodwill connected to Plaintiff's brand.

**JURISDICTION AND VENUE**

4. This is an action seeking damages and injunctive relief for trademark counterfeiting and infringement, false designation of origin under the Lanham Act, common law unfair competition; common law trademark infringement pursuant to 15 U.S.C. §§ 1114, 1116, 1121, 1125(a), and 1125(d), and The All Writs Act, 28 U.S.C. § 1651(a); 15 U.S.C. § 1051 *et seq*.

5. This Court has subject matter jurisdiction pursuant to 15 U.S.C. §§ 1114 and 1125(a), 15 U.S.C. § 1121 and 28 U.S.C. §§ 1331 and 1338.

6. This Court has supplemental jurisdiction under 28 U.S.C. § 1367 over the state law claims, because the claims are so related to the trademark claims in this action, over which this Court has original jurisdiction, that they form part of the same case or controversy under Article III of the United States Constitution.

7. Defendants are subject to personal jurisdiction in this District because they direct business activities toward and conduct business with consumers throughout the United States, including within the State of Florida and this District through at least the Internet based e-commerce stores and fully interactive commercial Internet websites accessible in Florida and operating under the Seller IDs. Upon information and belief, Defendants infringe Plaintiff's trademarks in this District by advertising, using, selling, promoting and distributing counterfeit trademark goods through such Internet based e-commerce stores and fully interactive commercial Internet websites.

8. Venue is proper in this District pursuant 28 U.S.C. § 1391 since Defendants are, upon information and belief, aliens engaged in infringing activities and causing harm within this District by advertising, offering to sell, selling and/or shipping infringing products into this District. Defendants may be found in this District, as they are subject to personal jurisdiction herein.

## THE PLAINTIFF

9. Plaintiff Cavalera is an invidiual residing in Phoenix, Arizona.

10. Cavalera is the owner of all rights, title, and interest in the mark "Soulfly" (the "Soulfly Marks").

11. Cavalera, former frontman of Brazilian group Sepultura, is the lead member of the American heavy metal band Soulfly. Soulfly was formed in 1997 and to date the band has released eleven studio albums, one tour EP, twenty-three singles, one video album, and twelve music videos. Their debut album, Soulfly, which was released on April 21, 1998 sold over 500,000 copies in the United States alone.

12. A trailblazing pioneer and musician with millions of albums sold who nevertheless retains boundless street cred due to his grimy, raw and undeniable authenticity, Cavalera is one of the most prolific artists the realm of heavy music has ever known. Cavalera is the walking embodiment of creative energy, of all of the diverse layers of urgency that are possible from that select few whose artistic output defines genres. Mystic shaman, protest singer, revolutionary hero, everyday metalhead, furious consumer of heavy music of all shades, husband, father, leader, songwriter. Cavalera reigns as the adoptive tribal chief of a generation of fans, stretching from the roughest slums of South America to the coldest confines of Russia. Anywhere that people are disenfranchised, the songs of Soulfly serve as their anthems.

13. Soulfly incorporates many styles of metal with Brazilian tribal and world music. The original lyrical content revolved around spirituality, political and religious themes, with later albums encompassing other themes including war, violence, aggression, slavery, hatred and anger. All of their first six studio albums debuted on the United States Billboard 200, with a peak position at number 32 for their second album, Primitive. Soulfly has been certified Gold by the Recording Industry Association of America.

14. In addition to the band's numerous albums, Cavalera and Soulfly frequently go on tour with a who's-who of the heavy music scene. Band mates, guest musicians and touring members include members from Slipknot, Slayer, Megadeth, Deftones, Radiohead, Stone Sour, Cypress Hill, Machine Head, Devildriver, Fear Factory, Morbid Angel, Throwdown, S.O.D., Skindred, Borknagar, Will Haven and Cattle Decapitation, among others.

15. Goods bearing and reproducing the Soulfly Marks are sold through authorized retailers throughout the United States, including within the State of Florida and this District.

4

Genuine and authorized products bearing and reproducing the Soulfly Marks are widely legitimately advertised, promoted, and distributed by and through Cavalera and his authorized partners, including but not limited to the following official online stores and websites: https://www.omerch.eu/shop/soulfly and https://www.soulfly.com/. Over the course of the past several years, visibility on the Internet, particularly via Internet search engines such as Google, Yahoo!, and Bing, has become increasingly important to Cavalera's overall marketing and consumer education efforts. Thus, Cavalera expends significant monetary resources on Internet marketing and consumer education, including search engine optimization ("SEO") strategies. Those strategies allow Cavalera and his authorized partners to educate consumers fairly and legitimately about the value associated with the Soulfly brand.

**THE DEFENDANTS**

16. Defendants are individuals and/or business entities of unknown makeup, the majority of whom, upon information and belief, either reside and/or operate in foreign jurisdictions, or redistribute products from the same or similar sources in those locations and/or ship their goods from the same or similar sources in those locations to shipping and fulfillment centers within the United States to redistribute their products from those locations. Defendants have the capacity to be sued pursuant to Federal Rule of Civil Procedure 17(b). Defendants target their business activities towards consumers throughout the United States, including within this district through the operation of Internet based e-commerce stores via Internet marketplace websites under the Seller IDs.

17. With respect to those Defendants that do not reside and/or operate in foreign jurisdictions, all of these domestic Defendants conduct business in the State of Florida. All domestic Defendants that are non-residents of the State of Florida availed themselves of the

privilege extended by law to non-residents and others to operate, conduct, engage in, or carry on a business or business venture in the State of Florida, or to have an office or agency in Florida. Based on the foregoing, it is appropriate in this matter for all domestic Defendants that are non-residents of the State of Florida to be served with process through substitute service on the Secretary of State of Florida pursuant to Fla. Stat. §§ 48.161 and 48.181.

18. Defendants are the past and present controlling forces behind the sale of products under counterfeits and infringements of Plaintiff's trademarks as described herein using at least the Seller IDs.

19. Upon information and belief, Defendants directly engage in unfair competition by advertising, offering for sale, and selling goods bearing one or more of Plaintiff's trademarks to consumers within the United States and this District through Internet based e-commerce stores using, at least, the Seller IDs and additional seller identification aliases and domain names not yet known to Plaintiff. Defendants have purposefully directed some portion of their illegal activities towards consumers in the State of Florida through the advertisement, offer to sell, sale, and/or shipment of counterfeit and infringing goods into the State.

20. Defendants have registered, established or purchased, and maintained their Seller IDs. Upon information and belief, Defendants may have engaged in fraudulent conduct with respect to the registration of the Seller IDs.

21. Upon information and belief, some Defendants have registered and/or maintained their Seller IDs for the sole purpose of engaging in illegal counterfeiting activities.

22. Upon information and belief, Defendants will continue to register or acquire new seller identification aliases and domain names for the purpose of selling and offering for sale goods

bearing counterfeit and confusingly similar imitations of one or more of Plaintiff's trademarks unless preliminarily and permanently enjoined.

23. Defendants use their Internet-based businesses in order to infringe the intellectual property rights of Plaintiff.

24. Defendants' business names, *i.e.*, the Seller IDs, associated payment accounts, and any other alias seller identification names used in connection with the sale of counterfeit and infringing goods bearing one or more of Plaintiff's trademarks are essential components of Defendants' online activities and are one of the means by which Defendants further their counterfeiting and infringement scheme and cause harm to Plaintiff. Moreover, Defendants are using Plaintiff's famous trademarks to drive Internet consumer traffic to their e-commerce stores operating under the Seller IDs, thereby increasing the value of the Seller IDs and decreasing the size and value of Plaintiff's legitimate marketplace and intellectual property rights at Plaintiff's expense.

## GENERAL FACTUAL ALLEGATIONS

### *Cavalera's Intellectual Property Rights*

25. Plaintiff is the owner of the following trademark, which is valid and registered on the Principal Register of the United States Patent and Trademark Office:

| Trademark | Registration Number | Registration Date | Class / Goods |
|---|---|---|---|
| SOULFLY | 6,252,486 | 01/19/2021 | IC 032: Beer |
| SOULFLY | 2,284,044 | 10/05/1999 | IC 025: clothing, namely, shirts, t-shirts, sweatshirts, [jerseys, pants, sweatpants, shorts, jackets,] hats, caps |
| SOULFLY | 2,261,682 | 07/13/1999 | |

|  |  |  | IC 009: series of musical sound recordings |
|---|---|---|---|
| SOULFLY | 2,276,699 | 09/07/1999 | IC 041: entertainment services, namely, live performances by a musical group |

The foregoing registrations for the Soulfly Standard Character Mark constitute presumptive evidence of their ownership and validity. True and correct copies of the federal registrations for the Soulfly Standard Character Marks are attached hereto as **Composite Exhibit 1.** Plaintiff is also the owner of the following logo:



(the "Soulfly Logo"). Collectively the Soulfly Standard Character Marks and Soulfly Logo are referred to herein as the "Soulfly Marks."

26. The Soulfly Marks are used in connection with the design, marketing, and distribution of high-quality goods in at least the category identified above.

27. Long before Defendants began their infringing activities complained of herein, the Soulfly Marks had been used by Plaintiff in interstate commerce to identify and distinguish Mr. Cavalera's career and associated merchandise for an extended period.

28. The Soulfly Marks are well-known and famous and have been for many years. Plaintiff has expended substantial time, money, and other resources developing, advertising, and

otherwise promoting the Soulfly Marks and products bearing the Soulfly Marks. The Soulfly Marks qualify as famous marks as that term is used in 15 U.S.C. §1125(c)(1).

29. Plaintiff has extensively used, advertised, and promoted the Soulfly Marks in the United States in association with his merchandise.

30. As a result of Plaintiff's efforts, members of the consuming public readily identify products and merchandise bearing or sold under the Soulfly Marks as being high quality goods sponsored and approved by Plaintiff.

31. The Soulfly Marks serve as a symbol of Plaintiff's quality, reputation, and goodwill and have never been abandoned.

### *Defendants' Counterfeiting and Infringing Conduct*

32. Upon information and belief, Defendants are promoting and advertising, distributing, selling, and/or offering for sale counterfeit and infringing goods in interstate commerce using exact copies and confusingly similar copies of the Soulfly Marks through at least the Internet based e-commerce stores operating under the Seller IDs (collectively, the "Counterfeit Goods"). Plaintiff has used the Soulfly Marks extensively and continuously before Defendants began offering counterfeit and confusingly similar imitations of Plaintiff's merchandise.

33. Upon information and belief, Defendants' Counterfeit Goods are of a quality substantially and materially different than that of Plaintiff's genuine goods. Defendants, upon information and belief, are actively using, promoting and otherwise advertising, distributing, selling and/or offering for sale substantial quantities of their Counterfeit Goods with the knowledge and intent that such goods will be mistaken for the genuine high quality goods offered for sale by Plaintiff under the Soulfly Marks despite Defendants' knowledge that they are without authority to use the Soulfly Marks. The effect of Defendants' actions will cause confusion of consumers, at

the time of initial interest, sale, and in the post-sale setting, who will believe Defendants' Counterfeit Goods are genuine goods originating from, associated with, or approved by Plaintiff.

34. Defendants advertise their Counterfeit Goods for sale to the consuming public via e-commerce stores on Internet marketplace websites using at least the Seller IDs. In so advertising these goods, Defendants improperly and unlawfully use the Soulfly Marks without Plaintiff's permission.

35. As part of their overall infringement and counterfeiting scheme, Defendants are, upon information and belief, employing and benefitting from substantially similar, advertising and marketing strategies based, in large measure, upon an illegal use of counterfeits and infringements of the Soulfly Marks. Specifically, Defendants are using counterfeits and infringements of Plaintiff's famous Soulfly Marks in order to make their e-commerce stores and websites selling illegal goods appear more relevant, authentic, and attractive to consumers searching for Plaintiff's related goods and information online. By their actions, Defendants are contributing to the creation and maintenance of an illegal marketplace operating in parallel to the legitimate marketplace for Plaintiff's genuine goods. Defendants are causing individual, concurrent and indivisible harm to Plaintiff and the consuming public by (i) depriving Plaintiff and other third parties of their right to fairly compete for space within search engine results and reducing the visibility of Plaintiff's genuine goods on the World Wide Web, (ii) causing an overall degradation of the goodwill associated with the Soulfly Marks, and/or (iii) increasing Plaintiff's overall cost to market the Soulfly Marks and educate consumers about his brand via the Internet.

36. Upon information and belief, Defendants are concurrently targeting their counterfeiting and infringing activities toward consumers and causing harm within this District

and elsewhere throughout the United States. As a result, Defendants are defrauding Plaintiff and the consuming public for Defendants' own benefit.

37. Upon information and belief, at all times relevant hereto, Defendants in this action had full knowledge of Plaintiff's ownership of the Soulfly Marks, including his exclusive right to use and license such intellectual property and the goodwill associated therewith.

38. Defendants' use of the Soulfly Marks, including the promotion and advertisement, distribution, sale and offering for sale of their Counterfeit Goods, is without Plaintiff's consent or authorization.

39. Defendants are engaging in the above-described illegal counterfeiting and infringing activities knowingly and intentionally or with reckless disregard or willful blindness to Plaintiff's rights for the purpose of trading on Plaintiff's goodwill and reputation. If Defendants' intentional counterfeiting and infringing activities are not preliminarily and permanently enjoined by this Court, Plaintiff and the consuming public will continue to be harmed.

40. Defendants' above identified infringing activities are likely to cause confusion, deception, and mistake in the minds of consumers before, during and after the time of purchase. Moreover, Defendants' wrongful conduct is likely to create a false impression and deceive customers, the public, and the trade into believing there is a connection or association between Plaintiff's genuine goods and Defendants' Counterfeit Goods, which there is not.

41. Upon information and belief, Defendants' payment and financial accounts are being used by Defendants to accept, receive, and deposit profits from Defendants' trademark counterfeiting and infringing and unfairly competitive activities connected to their Seller IDs and any other alias seller identification names being used and/or controlled by them.

42. Further, upon information and belief, Defendants are likely to transfer or conceal their assets to avoid payment of any monetary judgment awarded to Plaintiff.

43. Plaintiff has no adequate remedy at law.

44. Plaintiff is suffering irreparable injury and has suffered substantial damages as a result of Defendants' unauthorized and wrongful use of the Soulfly Marks.

45. The harm and damages sustained by Plaintiff have been directly and proximately caused by Defendants' wrongful use, advertisement, promotion, offers to sell, and sale of their Counterfeit Goods.

### COUNT I -- TRADEMARK COUNTERFEITING AND INFRINGEMENT PURSUANT TO § 32 OF THE LANHAM ACT (15 U.S.C. § 1114)

46. Plaintiff hereby adopts and re-alleges the allegations set forth in paragraphs 1 through 45 as though fully set forth herein.

47. This is an action for trademark counterfeiting and infringement against Defendants based on their use of counterfeit and confusingly similar imitations of the Soulfly Marks in commerce in connection with the promotion, advertisement, distribution, offering for sale, and sale of the Counterfeit Goods.

48. Defendants are promoting and otherwise advertising, selling, offering for sale, and distributing goods, using counterfeits and/or infringements of the Soulfly Marks. Defendants are continuously infringing and inducing others to infringe the Soulfly Marks by using one or more of them to advertise, promote, offer to sell, and/or sell at least counterfeit and infringing goods.

49. Defendants' concurrent counterfeiting and infringing activities are likely to cause and actually are causing confusion, mistake, and deception among members of the trade and the general consuming public as to the origin and quality of Defendants' Counterfeit Goods.

50. Defendants' unlawful actions have individually and jointly caused and are continuing to cause unquantifiable damage to Plaintiff and are unjustly enriching Defendants with profits at Plaintiff's expense.

51. Defendants' above-described illegal actions constitute counterfeiting and infringement of the Soulfly Marks in violation of Plaintiff's rights under § 32 of the Lanham Act, 15 U.S.C. § 1114.

52. Plaintiff has suffered and will continue to suffer irreparable injury and damages due to Defendants' above described activities if Defendants are not preliminarily and permanently enjoined.  Additionally, Defendants will continue to wrongfully profit from their illegal activities.

## COUNT II -- FALSE DESIGNATION OF ORIGIN
## PURSUANT TO § 43(A) OF THE LANHAM ACT (15 U.S.C. § 1125(a))

53. Plaintiff hereby adopts and re-alleges the allegations set forth in paragraphs 1 through 45 as though fully set forth herein.

54. Upon information and belief, Defendants' Counterfeit Goods bearing, offered for sale, and sold under copies of the Soulfly Marks have been widely advertised and offered for sale throughout the United States via the Internet.

55. Defendants' Counterfeit Goods bearing, offered for sale, and sold under copies of the Soulfly Marks are virtually identical in appearance to Plaintiff's genuine goods.  However, Defendants' Counterfeit Goods are different in quality.  Accordingly, Defendants' activities are likely to cause confusion in the trade and among the general public as to at least the origin or sponsorship of their Counterfeit Goods.

56. Defendants, upon information and belief, have used in connection with their advertisement, offer for sale, and sale of their Counterfeit Goods, false designations of origin and false descriptions and representations, including words or other symbols and trade dress, which

13

tend to falsely describe or represent such goods and have caused such goods to enter into commerce with full knowledge of the falsity of such designations of origin and such descriptions and representations, all to Plaintiff's detriment.

57.  Defendants have authorized infringing uses of the Soulfly Marks in Defendants' advertisement and promotion of their counterfeit and infringing branded goods. Defendants have misrepresented to members of the consuming public that the Counterfeit Goods being advertised and sold by them are genuine, non-infringing goods.

58.  Additionally, Defendants are using counterfeits and infringements of the Soulfly Marks in order to unfairly compete with Plaintiff and others for space within search engine organic results, thereby jointly depriving Plaintiff of a valuable marketing and educational tool which would otherwise be available to Plaintiff and reducing the visibility of Plaintiff's genuine goods on the World Wide Web.

59.  Defendants' above-described actions are in violation of Section 43(a) of the Lanham Act, 15 U.S.C. §1125(a).

60.  Plaintiff has no adequate remedy at law and has sustained indivisible injury and damage caused by Defendants' concurrent conduct. Absent an entry of an injunction by this Court, Defendants will continue to wrongfully reap profits and Plaintiff will continue to suffer irreparable injury to his goodwill and business reputation, as well as monetary damages.

### COUNT III -- COMMON LAW UNFAIR COMPETITION

61.  Plaintiff hereby adopts and re-alleges the allegations set forth in paragraphs 1 through 45 as though fully set forth herein.

62.  This is an action against Defendants based on their promotion, advertisement, distribution, sale, and/or offering for sale of goods using marks which are virtually identical, both

visually and phonetically, to the Soulfly Marks in violation of Florida's common law of unfair competition.

63. Specifically, Defendants are promoting and otherwise advertising, selling, offering for sale and distributing goods bearing counterfeits and infringements of the Soulfly Marks. Defendants are also using counterfeits and infringements of the Soulfly Marks to unfairly compete with Plaintiff for (i) space in search engine results across an array of search terms and/or (ii) visibility on the World Wide Web.

64. Defendants' infringing activities are likely to cause and actually are causing confusion, mistake and deception among members of the trade and the general consuming public as to the origin and quality of Defendants' products by their use of the Soulfly Marks.

65. Plaintiff has no adequate remedy at law and is suffering irreparable injury and damages as a result of Defendants' actions.

## COUNT IV - COMMON LAW TRADEMARK INFRINGEMENT

66. Plaintiff hereby adopts and re-alleges the allegations set forth in paragraphs 1 through 45 as though fully set forth herein.

67. This is an action for common law trademark infringement against Defendants based on their promotion, advertisement, offering for sale, and sale of their Counterfeit Goods bearing the Soulfly Marks. Plaintiff is the owner of all common law rights in and to the Soulfly Marks.

68. Specifically, Defendants, upon information and belief, are promoting and otherwise advertising, distributing, offering for sale, and selling goods bearing infringements of the Soulfly Marks.

69. Defendants' infringing activities are likely to cause and actually are causing confusion, mistake, and deception among members of the trade and general consuming public as to the origin and quality of Defendants' Counterfeit Goods bearing the Soulfly Marks.

70. Plaintiff has no adequate remedy at law and is suffering damages and irreparable injury as a result of Defendants' actions.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff demands judgment on all Counts of this Complaint and an award of equitable relief and monetary relief against Defendants as follows:

A. Entry of temporary, preliminary, and permanent injunctions pursuant to 15 U.S.C. § 1116, 17 U.S.C. § 502(a), and Federal Rule of Civil Procedure 65 enjoining Defendants, their agents, representatives, servants, employees, and all those acting in concert or participation therewith, from manufacturing or causing to be manufactured, importing, advertising or promoting, distributing, selling or offering to sell their Counterfeit Goods; from infringing, counterfeiting, or diluting the Soulfly Marks; from using the Soulfly Marks, or any mark or design similar thereto, in connection with the sale of any unauthorized goods; from using any logo, trade name or trademark or design that may be calculated to falsely advertise the services or products of Defendants as being sponsored by, authorized by, endorsed by, or in any way associated with Plaintiff; from falsely representing themselves as being connected with Plaintiff, through sponsorship or association, or engaging in any act that is likely to falsely cause members of the trade and/or of the purchasing public to believe any goods or services of Defendants are in any way endorsed by, approved by, and/or associated with Plaintiff; from using any counterfeit, copy, or colorable imitation of the Soulfly Marks in connection with the publicity, promotion, sale, or advertising of any goods sold by Defendants; from affixing, applying, annexing or using in

connection with the sale of any goods, a false description or representation, including words or other symbols tending to falsely describe or represent Defendants' goods as being those of Plaintiff, or in any way endorsed by Plaintiff and from offering such goods in commerce; from engaging in search engine optimization strategies using colorable imitations of Plaintiff's Soulfly Marks; and from otherwise unfairly competing with Plaintiff.

   B. Entry of an order pursuant to 28 U.S.C. § 1651(a), The All Writs Act, and the Court's inherent authority, that, upon Plaintiff's request, the applicable governing Internet marketplace website operators and/or administrators for the Seller IDs who are provided with notice of an injunction issued by the Court disable and/or cease facilitating access to the Seller IDs, and any other alias seller identification names being used and/or controlled by Defendants to engage in the business of marketing, offering to sell, and/or selling goods bearing counterfeits and infringements of the Soulfly Marks.

   C. Entry of an order pursuant to 28 U.S.C. § 1651(a), The All Writs Act, and the Court's inherent authority, that, upon Plaintiff's request, any Internet marketplace website operators and/or administrators for the Seller IDs who are provided with notice of an injunction issued by the Court, identify any e-mail address known to be associated with Defendants' respective Seller ID.

   D. Entry of an order pursuant to 28 U.S.C. § 1651(a), The All Writs Act, and the Court's inherent authority that, upon Plaintiff's request, any Internet marketplace website operators and/or administrators who are provided with notice of an injunction issued by the Court permanently remove any and all listings and associated images of goods bearing counterfeits and/or infringements of the Soulfly Marks via the e-commerce stores operating under the Seller IDs, and upon Plaintiff's request, any other listings and images of goods bearing counterfeits

and/or infringements of the Soulfly Marks associated with and/or linked to the same sellers or linked to any other alias seller identification names being used and/or controlled by Defendants to promote, offer for sale and/or sell goods bearing counterfeits and/or infringements of the Soulfly Marks.

  E. Entry of an order requiring Defendants to account to and pay Plaintiff for all profits and damages resulting from Defendants' trademark counterfeiting and infringing and unfairly competitive activities and that the award to Plaintiff be trebled, as provided for under 15 U.S.C. §1117, or, at Plaintiff's election with respect to Count I, that Plaintiff be awarded statutory damages from each Defendant in the amount of two million dollars ($2,000,000.00) per each counterfeit trademark used and product type sold, as provided by 15 U.S.C. §1117(c)(2) of the Lanham Act.

  F. Entry of an order that, upon Plaintiff's request, Defendants and any financial institutions, payment processors, banks, escrow services, money transmitters, or marketplace platforms, and their related companies and affiliates, identify and restrain all funds, up to and including the total amount of judgment, in all financial accounts and/or sub-accounts used in connection with the Seller IDs or other alias seller identification or e-commerce store names, domain names and/or websites used by Defendants presently or in the future, as well as any other related accounts of the same customer(s) and any other accounts which transfer funds into the same financial institution account(s), to be surrendered to Plaintiff in partial satisfaction of the monetary judgment entered herein.

  G. Entry of an award pursuant to 15 U.S.C. § 1117 (a) and (b) of Plaintiff's costs and reasonable attorneys' fees and investigative fees associated with bringing this action.

      H.      Entry of an order requiring Defendants to pay prejudgment interest according to law.

      I.      Entry of an order for such other and further relief as the Court may deem proper and just.

Date:   June 29, 2021

Respectfully submitted by,

THE BRICKELL IP GROUP, PLLC  
1101 Brickell Avenue  
South Tower, Suite 800  
Miami FL, 33131  
Tel: 305-728-8831  
Fax: 305-428-2450  

*/s/ Nicole Fundora*_____  
Richard Guerra  
Fla. Bar No. 689521  
Email: rguerra@brickellip.com  
Nicole Fundora  
Fla. Bar No. 1010231  
Email: nfundora@brickellip.com  
*Counsel for Plaintiff*